

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 9, 2020

**BY ECF**

The Honorable Colleen McMahon
Chief United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

     Re:  *United States v. Anthony Givens*, 14-cr-546 (CM)

Dear Chief Judge McMahon:

  The Government writes in opposition to the defendant's June 25, 2020 motion for compassionate release under Title 18, United States Code, Section 3582(c)(1)(A)(i).  Because the BOP has no record of Mr. Givens's efforts to administratively exhaust his motion for compassionate release, this Court lacks authority to grant Mr. Givens's requested relief at this time.  Moreover, even assuming that Mr. Givens's obesity presents an extraordinary and compelling circumstance, the Section 3553 factors militate against release.  Because Mr. Givens violated supervised release on four occasions (culminating in a federal bank fraud charge that is the basis for his current sentence), the extraordinary remedy of compassionate release is not warranted and the request should be denied.

  **A. Background**

  On June 15, 2015, the defendant pleaded guilty to participating in a marijuana conspiracy and was sentenced to time served (which was 300 days' imprisonment) followed by three years' supervised release.  The defendant then violated his supervised release four separate times.  The first three of these violations are described in detail in the Government's prior submission dated June 29, 2018.  (ECF No. 607.)

  *First Violation*.  In November 2016, this Court imposed a sentence of four months' imprisonment for Givens's first violation.  Givens violated supervised release by:  (1) committing the state crime of assault, arising from an incident where he struck his girlfriend about the face and body on several occasions, causing injuries to her knee, bleeding to her right eye, and redness and swelling to her face; (2) failing to report to Probation; and (3) committing the state crime of resisting arrest, arising from an incident where he hit another individual, causing the victim to be treated at the hospital, and resisted arrest, causing the arresting officer to strain and tear a muscle and require treatment at a local hospital.  (ECF No. 607.)

  Separately, on July 6, 2016, the defendant pleaded guilty and was sentenced for attempted assault in the third degree following a domestic dispute in which he "punched his now former girlfriend . . . with a closed fist in her face multiple times."  (PSR ¶ 33.)  Also on July 6, 2016, the

defendant pleaded guilty and was sentenced for resisting arrest and attempted assault in the third degree following another violent incident where the defendant "assaulted a male victim by punching him in the face." (PSR ¶ 34.)

*Second Violation*. In November 2017, this Court imposed a sentence of time served for the defendant's second violation. The violations were that Givens used marijuana and failed to inform Probation that he lost his job. (ECF No. 607.)

*Third Violation*. In July 2018, this Court sentenced Givens to 6 months' imprisonment and 2 years' supervised release. Givens failed to meet conditions regarding drug treatment. However, also before the Court was another violent incident involving Givens, wherein he appeared to punch and throw to the ground a woman wearing a black jacket (although the specification related to this incident was dismissed and not pleaded to). (ECF No. 607.)

*Fourth Violation*. Between October 2018 and December 2018, Givens deposited approximately nine stolen checks totaling approximately $75,153.28 into different bank accounts at a national bank. (PSR ¶ 9.) The stolen checks were personal checks issued by nine different victims. (*Id.* at ¶¶ 10-14.) In total, Mr. Givens's bank fraud scheme caused an actual loss to the bank of approximately $25,981.55. (*Id.* at ¶ 16.)

On March 29, 2019, the defendant pleaded guilty to one count of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. The substantive bank fraud case was before Judge Kaplan, who sentenced Givens to 18 months' imprisonment to be followed by 5 years' supervised release. Following that sentence, Givens admitted to additional violations of supervised release before this Court. On or about September 18, 2019, this Court sentenced Givens to an additional 9 months' imprisonment, which runs consecutively to the 18-month sentence imposed by Judge Kaplan.

### B. Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court "may not modify a term of imprisonment once it has been imposed except" that:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13. That section provides that the Court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* § 1B1.13(3). The Application Notes describe the circumstances under which "extraordinary and compelling reasons exist." *Id.* § 1B1.13 Application Note 1. Application Note 1 provides in relevant part:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I)   suffering from a serious physical or medical condition,

(II)  suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. *Id.* § 1B1.13 Application Note 1. A catchall provision also allows the Director of the BOP to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* Application Note 1(D). But the Director of the BOP has not made such a determination in this case. Regardless of the theory of "extraordinary and compelling reasons," the 18 U.S.C. § 3553(a) factors are relevant to whether compassionate release is warranted. See 18 U.S.C. § 3582; U.S.S.G. § 1B1.13.

As the proponent of the motion, the defendant bears the burden of proving that "extraordinary and compelling reasons" exist. *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

### C. Discussion

As of this filing, it appears that the Defendant has failed to exhaust his administrative remedies and the Court should deny his motion (without prejudice) for that reason. Nonetheless, even on the merits, the Defendant has not met his burden to justify release.

### 1. The Defendant Has Not Exhausted his Administrative Remedies

Although the defendant maintains that he has petitioned the warden for compassionate release and that the BOP denied this request, the Government has been unable to corroborate that with the BOP. Accordingly, it appears that Givens has not exhausted his administrative remedies and that this Court does not have the authority to grant the requested relief at this time.[1]

---

[1] The Government has learned that the BOP rejected Givens's request to be released on home confinement because, among other reasons, he presents a "high risk" of recidivism. The BOP has

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." *Id.* § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons ("BOP") or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Section 3582(c)(1)(A)'s exhaustion requirement is therefore mandatory. It is critical, in this context, to note that Section 3582(c)'s exhaustion requirement is statutory, and thus is not the sort of judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). By significant contrast, *statutory* exhaustion requirements "stand[] on a different footing." *Id.* There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id.* Thus, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. *Id.*; *see also Bastek v. Fed. Crop. Ins.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, we are not free to rewrite the statutory text.").

As described above, Section 3582(c)(1)(A) contains mandatory exhaustion language with no statutory exceptions. The plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights" or waited 30 days after transmitting his request to the warden. Unlike the Prison Litigation Reform Act ("PLRA"), for example, there is no statutory qualifier that a defendant need only exhaust all "available" remedies.[2] *See also* 28 U.S.C. § 2254(b)(1)(A) (habeas statute requires exhaustion of all remedies "available in the courts of the State"). Thus, Section 3582(c)(1)(A) is a mandatory exhaustion provision with no applicable exceptions. *Cf. Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims). As Circuit Judge Sullivan, sitting by designation, recently explained, Section 3582(c)'s exhaustion requirement is "clear as day" and is therefore

---

informed the Government that it is unaware of any other request besides Givens's request to be placed on home confinement. Defense counsel has informed the Government that he believes Givens did file a request for compassionate release, but, out of an abundance of caution, counsel recently filed a formal request for compassionate release on Givens's behalf. Thirty days have not yet lapsed since defense counsel filed that formal request.

[2] In particular, the PLRA demands that an inmate exhaust "such administrative remedies *as are available*," meaning that the only permissible exception to exhaustion is where the remedies are "unavailable." *Ross,* 136 S. Ct. at 1856-58 (emphasis added); *see also id.* at 1855 (criticizing the "freewheeling approach" adopted by some courts of appeals to exhaustion requirements, and overruling precedent from the Second Circuit and other circuits that had read additional exceptions into the rule). Here, no such exception exists in the statute.

4

mandatory. *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020).

In recent weeks, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release, and have argued that the exhaustion requirement should be excused. Both of the two court of appeals to have addressed the question have rejected the argument and required exhaustion. *See United States v. Raia*, 954 F.3d 594 (3d Cir. 2020); *United States v. Alam*, No. 20-1298 (6th Cir. June 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* at 597. The Sixth Circuit agreed in *Alam*. The vast majority of district courts in this District have also required exhaustion despite COVID-19 claims.[3] These decisions are consistent with the plain language of Section 3582(c).

To be sure, COVID-19 presents unusual circumstances, in which compassionate release decisions should be made expeditiously. But the text of Section 3582 contains no exigency exception for such circumstances, and indeed the text affirmatively refutes the availability of such an exception. While many statutory exhaustion provisions require exhaustion of all administrative remedies before a claim is brought in court, Section 3582 provides an alternative: exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). This 30-day alternative rule is a "limited futility-like exception," and, therefore, "[g]iven Congress's decision to mandate exhaustion and specify a single alternative, the Court is not free to infer a 'general unwritten special circumstances exception.'" *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y.

---

[3] *See United States v. Battle*, No. 05 Cr. 377 (VM), 2020 WL 2306482, at *1 (S.D.N.Y. May 8, 2020); *United States v. Hart*, 17 Cr. 248 (VSB), 2020 WL 1989299, at *4 (S.D.N.Y. Apr. 27, 2020); *United States v. Wright*, 17 Cr. 695 (CM), 2020 WL 1922371, at *2 (S.D.N.Y. Apr. 20, 2020); *United States v. Demaria*, No. 17 Cr. 569 (ER), 2020 WL 1888910, at *4 (S.D.N.Y. Apr. 16, 2020); *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3-*5 (S.D.N.Y. Apr. 14, 2020); *United States v. Bonventre*, 10 Cr. 228 (LTS), 2020 WL 1862638, at *2-*3 (S.D.N.Y. Apr. 14, 2020); *United States v. Pereyra-Polanco*, 19 Cr. 10 (NRB), 2020 WL 1862639, at *1 (S.D.N.Y. Apr. 14, 2020); *United States v. Rabadi*, No. 13 Cr. 353 (KMK), 2020 WL 1862640, at *2-*3 (S.D.N.Y. Apr. 14, 2020); *United States v. Engleson*, 13 Cr. 340 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020); *United States v. Fana*, 19 Cr. 11 (GHW), 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020); *United States v. Canale*, 17 Cr. 287 (JPO), 2020 WL 1809287, at *2 (S.D.N.Y. Apr. 9, 2020); *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); *United States v. Ramos*, No. 14 Cr. 484 (LGS), 2020 WL 1685812, at *1 (S.D.N.Y. Apr. 7, 2020); *United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Cohen*, No. 18 Cr. 602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020). *But see United States v. Scparta*, No. 18 Cr. 578 (AJN), 2020 WL 1910481, at *5 (S.D.N.Y. Apr. 20, 2020); *United States v. Russo*, 16 Cr. 441 (LJL), 2020 WL 1862294, at *7 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, No. 19 Cr. 541 (JSR), 2020 WL 18211988, at *4 (S.D.N.Y. Apr. 13, 2020); *United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020).

Apr. 8, 2020) (quoting *Ross*, 136 S. Ct. at 1856, 1862); *see also United States v. Arena*, No. 18 Cr. 14 (VM) (Dkt. 354 at 2) (S.D.N.Y. Apr. 6, 2020) (stating that there is "simply no authority that permits [the defendant] to circumvent the administrative exhaustion requirement" based on a claim of futility, because the ability to seek relief after 30 days constitutes "an express futility provision"). Ultimately, defendants' arguments regarding the need for a futility exception "boil[] down to a pragmatic insistence that a 30-day waiting period is simply too long to wait in the current health crisis. But there is nothing in the First Step Act or its history to suggest that courts may modulate the exhaustion waiting period when they see fit." *Ogarro*, 2020 WL 1876300, at *5.

As the Third and Sixth Circuit both recognized, the mandatory exhaustion requirement accommodates the valuable role that the BOP plays in the compassionate release process. Informed decisions about compassionate release require the collection of information, like disciplinary records and medical history, that the BOP is uniquely suited to obtain and which will benefit both the BOP and later the court evaluating such claims. The BOP is also well situated to make relative judgments about the merits of compassionate release petitions—particularly at a time like this when many inmates are making petitions advancing similar claims—and adjudicate those positions in a consistent manner. As Judge Sutton explained, for prisoners seeking compassionate release:

> [T]ime usually will be of the essence. . . . Speed matters, yes. But accuracy matters too. Preventing prisoners from charging straight to federal court serves important purposes. It ensures that prison administrators can prioritize the most urgent claims. And it ensures that they can investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist. These are not interests we should lightly dismiss or re-prioritize.

*Alam*, slip op. at 6-7. The Court may of course review the BOP's judgments, but the Congress expressed its clear intent that such review would come second, with the benefit of the BOP's initial assessment. *See United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020). To ignore this mandatory exhaustion requirement would be legal error.

### 2. FCI Schuylkill and The Defendant's Medical Condition

The defendant's stated bases for release should not be considered in a vacuum. The extent to which the BOP's response to the pandemic has mitigated the risk that COVID-19 poses to inmates must also be taken into account. The Government will not describe those steps in detail here, as the Court is familiar with them from deciding other compassionate release motions and in its role as Chief Judge of this District. *See, e.g.*, *United States v. Wright*, No. 17 Cr. 695 (CM), 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020) (citing "[r]eports this Court has received—in its capacity as Chief Judge for this district—from the Warden of the MCC" regarding the BOP's efforts to limit the spread of the virus in MCC).

Suffice to say that the BOP continues to operate under modified conditions, including suspension of social visits and inmate movements (with limited exceptions where special procedures are followed to prevent the spread of COVID-19); continuous screening of inmates; quarantine of newly arriving inmates; isolation and testing of symptomatic inmates with exposure risk factors; and

other modified operations designed to maximize social distancing.[4] While several prison facilities have had a significant number of inmates and staff test positive for COVID-19, the BOP's preventive measures have proven especially effective at FCI Schuylkill, where there has been only one confirmed case among inmates, and no confirmed cases among staff. As one judge in this District recognized last month (when there had been no confirmed cases at FCI Schuylkill), the BOP has "implemented policies and consulted with appropriate experts to mitigate the risks posed by COVID-19," and "these measures appear to have been successful at FCI Schuylkill." *United States v. Ortega*, No. 02-CR-348, 2020 WL 3402914, at *2 (S.D.N.Y. June 19, 2020).

It is against this background that Givens contends, among other things, that he is obese and that this medical condition justifies release. Givens maintains that he has a current BMI of approximately 37.6.[5] The CDC's current guidance is that individuals with a BMI of over 30 are obese and have an increased risk of severe illness after contracting COVID-19. Accordingly, the Government does not dispute that Givens's obesity presents an extraordinary and compelling reason under the compassionate release statute.[6] Even assuming that Givens's medical condition presents

---

[4] These conditions, as well as the BOP's response to COVID-19 more generally, are described in detail on the BOP's COVID-19 resources webpage, which is available at https://www.bop.gov/coronavirus/.

[5] The Government's review of Mr. Givens's medical records reflect that as of September 2019, the defendant had a BMI of approximately 37.1.

[6] To the extent that Givens contends that "he may be more vulnerable to the virus as a Black man," Motion at 5, the Government notes that courts have rejected similar arguments as a basis for seeking release. *See, e.g.*, *United States v. Wade*, No. 5:15-CR-458-EJD-1, 2020 WL 3254422, at *3 (N.D. Cal. June 16, 2020) ("Statistically speaking, Defendant is correct that African Americans (and other minority communities) are overrepresented among patients hospitalized for the illness. However, the CDC has not indicated that this is a result of inherently increased susceptibility to coronavirus. To the contrary, certain extrinsic factors that tend to exist in populations of color seem to increase the risk of COVID-19. . . . [These] factors are not applicable to [the incarcerated] Defendant [in part because] he does not live and work in the community . . . ." (citations omitted) (citing CDC and Washington Post articles)); *United States v. Alexander*, No. 19-CR-32, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) ("As an initial matter, it is not clear that being African-American increases Defendant's risk of complications from the COVID-19, in the same manner as one's underlying medical conditions. Indeed, although African Americans are overrepresented in data regarding COVID-19 hospitalizations and deaths in America as a whole, this overrepresentation may result from other systemic economic and social issues affecting the African American community . . . . As such, it is unclear whether Defendant's race places him at greater risk of contracting COVID-19, while he is incarcerated and receiving medical treatment at [a correctional institution]." (citations omitted) (citing CDC article)); *Carlos M.D. v. Anderson*, No. 2:20-CV-3908, 2020 WL 2487646, at *8 (D.N.J. May 14, 2020) ("Petitioner has not established the link between what may be a pre-existing racial disparity in this country and how it would impact his ability to prevent infection or suffer from the severe effects if he is infected with COVID-19. Additionally, to date, the CDC has not designated members of any particular ethnic and/or racial group to be particularly prone to the adverse effects of COVID-19."); *cf. United States v. Winn*, No. H-18-691-8, 2020 WL 3077854, at *2 (S.D. Tex. June 10, 2020)

7

an extraordinary and compelling circumstance, however, as explained below, the Motion should be denied after considering the Section 3553 factors.

### 3. The Section 3553 Factors Counsel Against Release

Even assuming that Givens established an extraordinary and compelling reason justifying compassionate release, the § 3553(a) factors remain highly relevant for this Court in determining whether to grant a defendant's motion for compassionate release. Those factors weigh against defendant's Motion. *See* 18 U.S.C. § 3582(c)(1)(A) (directing the court to only consider a motion for compassionate release "after considering the factors set forth in section 3553(a) to the extent that they are applicable"); *United States v. Israel*, No. 05 Cr. 1039 (CM), 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019) ("The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances."). The most important Section 3553(a) factors here are a) the nature of the offense and the need for the sentence to reflect the seriousness of the crime; b) the need to provide adequate deterrence; c) the need to protect the public from further crimes of the defendant; and d) to promote respect for the law. 18 U.S.C. §§ 3553(a)(1), (2).

Givens has shown on four separate occasions that he cannot abide by the terms of supervision. Indeed, Givens's fourth violation was itself a violation of a federal bank fraud laws. Given Givens's history of violating his terms of supervision, the nine-month sentence that this Court imposed for Givens's latest violation was justified, and Givens should serve it to its conclusion. Nor would an early release "promote respect for the law" or "afford adequate deterrence to criminal conduct," § 3553(a)(2), given the seriousness of his repeated criminal conduct.

To grant compassionate release, the Court must also determine that Givens "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Much of the analysis here overlaps with the § 3553(a) factors. For example, the repeated violations of the Court's trust, the defendant's fraudulent conduct that formed the basis for his most recent violation, and the defendant's other criminal conduct, including his violent assault and resisting arrest convictions, also demonstrate that the defendant poses a danger to the community—including through his fraudulent and violent conduct—if released early. While the Government hopes that Givens's full sentence that is scheduled to end in March 2021 is sufficient to deter the defendant from committing additional crimes and to induce the defendant to comply with the terms of supervision, there is limited evidence suggesting the defendant will not pose a danger to reoffend if released early.

---

("[The defendant] has presented no evidence that African-Americans have a higher risk of a negative outcome should they become infected.").

8

### D. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c).

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By: ___/s/_____
Peter J. Davis
Assistant United States Attorney
Southern District of New York
(212) 637-2468

cc: counsel (by ECF)