UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA

V.                                                 14 CR 546-09 (CM)

ANTHONY GIVENS,

        Defendant.

------------------------------------------------------------x

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

On June 15, 2015, the defendant pleaded guilty to participating in a marijuana conspiracy and was sentenced to time served (which was 300 days' imprisonment) followed by three years' supervised release. The defendant proceeded to violate his supervised release four separate times. He is currently serving a sentence of nine months' imprisonment in connection with the latest of those violations. His projected release date is March 9, 2021.

Before the Court is Given's motion for compassionate release. Givens claims that FCI Schuylkill where he is incarcerated is rife with COVID-19 cases and that he is obese and therefore at increased risk of suffering a severe outcome should he contract the virus. The Government opposes the motion arguing that (1) Givens failed to exhaust his administrative remedies with the Bureau of Prisons, and (2) even if he had exhausted, he is not entitled to the requested relief.

The motion is denied.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/13/2020

1

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. Once such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Once a defendant has exhausted administrative remedies, with respect to the substantive determination, and in addition the statutory requirement that the Court consider the factors set forth in Section 3553(a), the United States Sentencing Guidelines contain a provision, Section 1B1.13, applicable to motions for sentencing reductions pursuant Section 3582(c)(1)(A). That section provides, in relevant part, that a reduction in sentence may be appropriate if the Court determines that--

(1) (A) Extraordinary and compelling reasons warrant the reduction; or

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3)    The reduction is consistent with this policy statement. U.S.S.G. § 1B1.13.

Subsection (1)(B) is inapplicable. With respect to subsection (1)(A), which relates to "extraordinary and compelling reasons" warranting a reduction, the Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See id.* § 1B1.13 comment (n.1). The only relevant provision reads as follows:

> (A)    Medical Condition of the Defendant.—
>
>     (i)    The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia
>
>     (ii)    The defendant is—
>
>         (I)    suffering from a serious physical or medical condition,
>
>         (II)    suffering from a serious functional or cognitive impairment, or
>
>         (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

As the proponent of the Motion, Givens bears the burden of proving that "extraordinary and compelling reasons" exist and that he is entitled to the relief he seeks. *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

<u>Givens' Motion in the Bureau of Prisons</u>

On April 14, 2020, Givens applied to the warden of FCI Schuylkill for both early release to home confinement *and* compassionate release. This is clear from copy of the warden's

3

decision on that request, dated April 16, 2020 (Marvinny Letter dated July 15, 2020, Ex. A). The decision denies Mr. Givens's request for early release to home confinement, and then *separately* denies his request for "a reduction in sentence (RIS)," a term of art which the BOP uses synonymously with "compassionate release." *See* BOP Program Statement No. 5050.50 (implementing the compassionate release statute and making clear that, "[f]or the purposes of this Program Statement, the terms 'compassionate release' and 'reduction in sentence' are used interchangeably"), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. Indeed, the warden's decision relies on, and explicitly references, 18 U.S.C. § 3582(c)(1)(A), the compassionate release statute on which Mr. Givens's instant motion is predicated.

Accordingly, Givens has exhausted his administrative remedies and his present motion for compassionate release is properly before the Court.[1]

Givens' Motion Before this Court

Givens asserts that the nature of Bureau of Prison facilities like FCI Schulylkill—where inmates and staff are confined together in close quarters—puts inmates at greater risk of contracting COVID-19, than that of the general population. He claims that since he is morbidly obese—he has a current Body Mass Index (BMI) of approximately 37.6., and that the CDC's current guidance is that individuals with a BMI of over 30 are obese—he has an increased risk of severe illness after contracting COVID-19. For these reasons he asks that he be granted compassionate release.

---

[1] The Government's argument that Givens did not properly exhaust by moving for compassionate release in his April 14 application to the warden is nonetheless moot. Mr. Marvinny, "in an excess of caution," emailed a compassionate release request to Givens's warden on July 1, 2020. (Marvinny Letter, Ex. B). So even if the Court were to find Given's April 14 application deficient, counsel's July 1 letter to the warden—filed more than 30 days ago—would satisfy the exhaustion requirement.

The Court accepts for the purposes of the present motion that: (1) BOP facilities like FCI Schulykill are not the ideal environment to be in during a pandemic;[2] (2) Givens is obese; and (3) in the age of COVID-19, obesity is an arguable basis for finding an extraordinary and compelling reason to grant certain inmates compassionate release. Givens, however, is not one of those inmates who warrants early release.

A court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances. The most important Section 3553(a) factors here are a) the nature of the offense and the need for the sentence to reflect the seriousness of the crime; b) the need to provide adequate deterrence; c) the need to protect the public from further crimes of the defendant; and d) to promote respect for the law. 18 U.S.C. §§ 3553(a)(1), (2).

Since the Court sentenced Givens to time served and placed him on supervised release for his involvement in the marijuana distribution conspiracy, Givens continued to engage in criminality, resulting in new arrests and numerous violations of his supervised release. In early 2016, Givens violated his supervised release for the first time by: (1) committing the state crime of assault, arising from an incident where he struck his girlfriend about the face and body on several occasions, causing injuries to her knee, bleeding to her right eye, and redness and swelling to her face; (2) failing to report to Probation; and (3) committing the state crime of

---

[2] As of this writing, the BOP website indicates that 169 inmates have been tested for COVID-19 at FCI Schuylkill—three tests are still pending, and only one inmate has tested positive for the virus. After dealing with numerous compassionate release motions over the last several months, I have learned that BOP statistical reporting for a particular facility does not always comport with the actual infection rate at that facility.

5

resisting arrest, arising from an incident where he hit another individual, causing the victim to be treated at the hospital, and resisted arrest, causing the arresting officer to strain and tear a muscle and require treatment at a local hospital. For these violations, the Court imposed a sentence of four months' imprisonment.

In November 2017, Givens was violated for using marijuana and failing to inform his probation officer that he had lost his job. I admonished defendant that I would not tolerate any further violations and sentence him to time served.

In July 2018, Probation filed a violation petition alleging that Givens committed another violent crime, punching a woman, as well as failing to comply with drug treatment. The specification related to the assault was dismissed on the motion of the Government and Probation, and Given's pleaded guilty to the failure to comply with drug treatment. I sentenced him to 6 months' imprisonment and 2 years' supervised release.

No sooner had Givens completed his two-month sentence than he engaged in a scheme to cash stolen checks. According to the indictment filed in 19 CR 214 (LAK), between October 2018 and December 2018, Givens deposited approximately nine stolen checks totaling approximately $75,153.28 into different bank accounts. (*See* 19 CR 214 (LAK) (PSR ¶¶ 9-14.) In total, the bank fraud scheme caused an actual loss to the bank of approximately $25,981.55. (Id. at ¶ 16.) Givens pleaded guilty before the Honorable Lewis A. Kaplan to one count of bank fraud and was sentenced by Judge Kaplan to 18 months' imprisonment, to be followed by 5 years' supervised release.

After being sentenced by Judge Kaplan, Givens was brought before this Court, where he pleaded guilty to violating the terms of his supervised release by committing bank fraud, as well

as other technical violations. I sentenced Givens to 9 months' imprisonment, to run consecutive to the 18-month sentence imposed by Judge Kaplan.

In light of Givens' history of violating his terms of supervision, he should serve his sentence to its conclusion—his early release would hardly "promote [his] respect for the law" or "afford adequate [specific] deterrence to criminal conduct," § 3553(a)(2).

The motion is denied.

Dated: August 13, 2020

_____
Colleen McMahon
Chief Judge


BY ECF TO ALL PARTIES