

**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI          OGC/LCI
NUMBER       5050.50
DATE         January 17, 2019

# Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)

/s/

*Approved*: Hugh J. Hurwitz
Acting Director, Federal Bureau of Prisons

1.  **PURPOSE AND SCOPE**

**§571.60  Purpose and scope.**

**Under 18 U.S.C. 4205(g), a sentencing court, on motion of the Bureau of Prisons, may make an inmate with a minimum term sentence immediately eligible for parole by reducing the minimum term of the sentence to time served. Under 18 U.S.C. 3582(c)(1)(A), a sentencing court, on motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment of an inmate sentenced under the Comprehensive Crime Control Act of 1984.**

**The Bureau uses 18 U.S.C. 4205(g) and 18 U.S.C. 3582(c)(1)(A) in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.**

18 U.S.C. 3582 was amended by the First Step Act of 2018, revisions noted below in Summary of Changes.

For the purposes of this Program Statement, the terms "compassionate release" and "reduction in sentence" are used interchangeably.

**Federal Regulations from 28 CFR are in this type.**
Implementing information is in this type.

Cited in US v Givens 1:14CR546-09 Decided 8/13/20

Archived on 8/24/20

This document is protected by copyright. Further reproduction is prohibited without permission.

In deciding whether to file a motion under either 18 U.S.C. 4205(g) or 18 U.S.C. 3582, the Bureau of Prisons (BOP) should consider whether the inmate's release would pose a danger to the safety of any other person or the community.

Under 18 USC 3582 (d)(2)(3), the Bureau ensures that all facilities regularly and visibly post, including in prisoner handbooks, staff training materials, and facility law libraries and medical and hospice facilities, and make available to prisoners upon demand, notice of—

(i) a defendant's ability to request a sentence reduction pursuant to subsection (c)(1)(A);

(ii) the procedures and timelines for initiating and resolving requests described in clause (i); and

(iii) the right to appeal a denial of a request described in clause (i) after all administrative rights to appeal within the Bureau of Prisons have been exhausted.

**§572.40  Compassionate release under 18 U.S.C. 4205(g).**

**18 U.S.C. 4205(g) was repealed effective November 1, 1987, but remains the controlling law for inmates whose offenses occurred prior to that date.  For inmates whose offenses occurred on or after November 1, 1987, the applicable statute is 18 U.S.C. 3582(c)(1)(A).  Procedures for compassionate release of an inmate under either provision are contained in 28 CFR part 571, subpart G.**

a.  **Program Objectives.**  The expected results of this program are:

■  A motion for a modification of a sentence will be made to the sentencing court only in particularly extraordinary or compelling circumstances that could not reasonably have been foreseen by the court at the time of sentencing.
■  The public will be protected from undue risk by careful review of each compassionate release request.
■  Compassionate release motions will be filed with the sentencing judge in accordance with the statutory requirements of 18 U.S.C. 3582 or 4205(g).

b.  **Summary of Changes**

*Policy Rescinded*

P 5050.49 CN-1  Compassionate Release/Reduction in Sentence: Procedures for Implementation
        of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)

The following have been added to this version of the Program Statement:

■ Requirements of section 603(b) of the First Step Act, codified at 18 USC § 3582:

➢ Requiring inmates be informed of reduction in sentence availability and process;

➢ Modifying definition of "terminally ill;"

➢ Requiring notice and assistance for terminally ill offenders;

➢ Requiring requests from terminally ill offenders to be processed within 14 days;

➢ Requiring notice and assistance for debilitated offenders; and

➢ Specifying inmates may file directly to court after exhaustion of administrative remedies, or 30 days from receipt of a request by the Warden's Office.

## 2.  INITIATION OF REQUEST – EXTRAORDINARY OR COMPELLING CIRCUMSTANCES

**§ 571.61  Initiation of request – extraordinary or compelling circumstances.**

**a.  A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden.  Ordinarily, the request shall be in writing, and submitted by the inmate.  An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.  The inmate's request shall at a minimum contain the following information:**

**(1)  The extraordinary or compelling circumstances that the inmate believes warrant consideration.**

**(2)  Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.**

**b.  The Bureau of Prisons processes a request made by another person on behalf of an inmate in the same manner as an inmate's request.  Staff shall refer a request received at the Central Office to the Warden of the institution where the inmate is confined.**

A request for a RIS is considered "submitted" for the purposes of 18 USC §3582 (c)(1), when received by the Warden in accordance with this section.

3. **REQUESTS BASED ON MEDICAL CIRCUMSTANCES**

The criteria for a reduction in sentence (RIS) request may include the following:

a. **Terminal Medical Condition**.  RIS consideration may be given to inmates who have been diagnosed with a terminal, incurable disease and whose life expectancy is eighteen (18) months or less, and/or has a disease or condition with an end-of-life trajectory under 18 USC § 3582(d)(1).  The BOP's consideration should include assessment of the primary (terminal) disease, prognosis, impact of other serious medical conditions of the inmate, and degree of functional impairment (if any).  Functional impairment (e.g., limitations on activities of daily living such as feeding and dressing oneself) is not required for inmates diagnosed with terminal medical conditions; however, functional impairment may be a factor when considering the inmate's ability or inability to reoffend.

Pursuant to 18 U.S.C. § 3582(d)(2)(A), in the case of a diagnosis of a terminal illness, the Bureau of Prisons shall, subject to confidentiality requirements:

> (i) not later than 72 hours after the diagnosis notify the defendant's attorney, partner, and family members of the defendant's condition and inform the defendant's attorney, partner, and family members that they may prepare and submit on the defendant's behalf a request for a sentence reduction pursuant to subsection (c)(1)(A);

> (ii) not later than 7 days after the date of the diagnosis, provide the defendant's partner and family members (including extended family) with an opportunity to visit the defendant in person;

> (iii) upon request from the defendant or his attorney, partner, or a family member, ensure that Bureau of Prisons employees assist the defendant in the preparation, drafting, and submission of a request for a sentence reduction pursuant to subsection (c)(1)(A); and

> (iv) not later than 14 days of receipt of a request for a sentence reduction submitted on the defendant's behalf by the defendant or the defendant's attorney, partner, or family member, process the request.

The statutory time frames of section 3582(d)(2)(A), begin once the Clinical Director of an institution makes a terminal diagnosis.  Once the diagnosis is made, the Clinical Director will inform the Warden and the appropriate Unit Manager as soon as possible so as to ensure requirements are met.

If the inmate is physically/psychologically able, the inmate should consent to notifications above using Form BP-A0192, Release of Information Consent, or equivalent written authorization.

If a visit is denied for security concerns, as reflected in 18 U.S.C. § 3582(d)(3)(J), the reasons should be documented.

The Warden will forward the information indicated in Section 8 of this policy, below, to Central Office within 14 days.

b. **Debilitated Medical Condition**.  RIS consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover.  The BOP should consider a RIS if the inmate is:

- Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
- Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

The BOP's review should also include any cognitive deficits of the inmate (e.g., Alzheimer's disease or traumatic brain injury that has affected the inmate's mental capacity or function).  A cognitive deficit is not required in cases of severe physical impairment, but may be a factor when considering the inmate's ability or inability to reoffend.

Pursuant to 18 U.S.C. § 3582(d)(2)(B), in the case of an inmate unable to submit a request for a RIS BOP institution staff shall:

(i) inform the defendant's attorney, partner, and family members that they may prepare and submit on the defendant's behalf a request for a sentence reduction pursuant to subsection (c)(1)(A)

(ii) accept and process a request for sentence reduction that has been prepared and submitted on the defendant's behalf by the defendant's attorney, partner, or family member under clause (i); and

(iii) upon request from the defendant or his attorney, partner, or family member, ensure that Bureau of Prisons employees assist the defendant in the preparation, drafting, and submission of a request for a sentence reduction pursuant to subsection (c)(1)(A).

All RIS requests should be assessed using the factors outlined in Section 7.

Cited in US v Gimms
AC 3542. Decided 8/3/20
AC 3542. Decided 10/24/20
Archived document is reproduced with copyright.
This document is reproduced without permission.
Further reproduction is prohibited without permission.

4. **REQUESTS BASED ON NON-MEDICAL CIRCUMSTANCES – ELDERLY INMATES**

The criteria for a RIS request may include the following:

a. **"New Law" Elderly Inmates.**  Inmates sentenced for an offense that occurred on or after November 1, 1987 (e.g., "new law"), who are age 70 years or older and have served 30 years or more of their term of imprisonment.[1]

b. **Elderly Inmates with Medical Conditions.**  Inmates who fit the following criteria:

- Age 65 and older.
- Suffer from chronic or serious medical conditions related to the aging process.
- Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility.
- Conventional treatment promises no substantial improvement to their mental or physical condition.
- Have served at least 50% of their sentence.

Additionally, for inmates in this category, the BOP should consider the following factors when evaluating the risk that an elderly inmate may reoffend:

- The age at which the inmate committed the current offense.
- Whether the inmate suffered from these medical conditions at the time the inmate committed the offense.
- Whether the inmate suffered from these medical conditions at the time of sentencing and whether the Presentence Investigation Report (PSR) mentions these conditions.

The BOP Medical Director will develop and issue medical criteria to help evaluate the inmate's suitability for consideration under this RIS category.

c. **Other Elderly Inmates.**  Inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced.

---

[1] These criteria are different from those provided in 18 U.S.C 3582(c)(1)(a)(ii), which states that a court, upon motion of the BOP Director, may reduce a sentence term if it finds that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

Elderly inmates who were age 60 or older at the time they were sentenced ordinarily should not be considered for RIS if their current conviction is listed in the Categorization of Offenses Program Statement.

All RIS requests should be assessed using the factors outlined in Section 7.

## 5.  REQUESTS BASED ON NON-MEDICAL CIRCUMSTANCES – DEATH OR INCAPACITATION OF THE FAMILY MEMBER CAREGIVER.

The criteria for a RIS request may include the death or incapacitation of the family member caregiver of an inmate's child, e.g., RIS requests from inmates whose biological or legally adopted child or children ("child") are suddenly without a family member caregiver due to that caregiver's death or incapacitation.

For these requests, "child" means a person under the age of 18 and "incapacitation" means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child.

In reviewing these requests, BOP should assess, based on the information provided, whether release of the inmate to care for the inmate's child is in the best interest of the child.

a.  **First Stage of the Warden's Review.**  The following information should be provided by the inmate to the Warden in writing for RIS requests based on the death or incapacitation of the family member caregiver:

■   A statement that explains that the inmate's family member caregiver has died or become incapacitated and that person was the caregiver for the inmate's biological or legally adopted child.

■   A statement that this person was the only family member capable of caring for the inmate's child.

■   The name of the deceased or incapacitated family member caregiver and the relationship of that person to the inmate (e.g., spouse, common-law spouse, mother, sister) and statement that the caregiver is a family member of the child.

■   For requests based on a deceased family member caregiver, an official copy of the family member caregiver's death certificate.

■   For requests based on an incapacitated family member caregiver, verifiable medical documentation of the incapacitation.

■   Verifiable documentation that the inmate is the parent of the child.  Acceptable documentation includes birth certificates, adoption papers, or verification of the inmate's paternity.

Cited in US v. Rivas
14-cr-546-CM, decided on 8/24/21
As reproduced on 8/24/21
Further this document is protected by copyright.
Further reproduction is prohibited without permission.

- Verifiable documentation providing the name and age of the child.
- A clear statement and documentation that the inmate has a release plan, including housing, and the financial means to care for the child immediately upon the inmate's release.
- Authorization from the inmate for the BOP to obtain any information or documents from any individual, medical entity or doctor, or any government agency about the inmate, family members, and minor child.

The Warden may deny the inmate's request at the institution level of review if the Warden finds that the inmate has not provided adequate information and documentation as set forth above.

b. **Second Stage of the Warden's Review.**  Even if the inmate provides adequate and sufficient information and documentation set forth above regarding the RIS request, further investigation is appropriate.  At this stage, the Warden should convene a committee consisting of the inmate's unit manager, correctional counselor, and any other relevant staff (social worker, physician, psychologist, etc.) to investigate the facts and circumstances provided by the inmate and to review supporting letters and documents before the Warden makes a recommendation to approve or deny the RIS request.  The additional information and supporting documentation gathered by the committee for the Warden's review should include:

- A general description of the child's physical and mental condition.
- A description of the nature of the child's care both during the inmate's pre-arrest and pre-sentence period, and during the inmate's current incarceration.
- Letters or documentation that the deceased/incapacitated family member was and still is the only family member caregiver capable of caring for the inmate's minor child.  These letters or documentation should include:

  ➢ Information indicating whether this family member was, in fact, caring for the child during the inmate's incarceration and immediately prior to the family member's death or incapacitation.
  ➢ An explanation of who has been caring for the child since the family member's death or incapacitation.
  ➢ If the child is in foster care, documentation verifying that the inmate will be able to immediately obtain custody of the child.

All RIS requests should be assessed using the factors outlined in Section 7 as well as the following factors.

- Has the inmate committed violent acts before or during the period of incarceration as reflected in the PSR, institutional disciplinary records, or other appropriate documentation?
- Did the inmate have drugs, drug paraphernalia, firearms, or other dangerous substances in the home while caring for the child prior to incarceration?

- ■ To what degree has the inmate had contact with or cared for the child prior to arrest, pretrial or pre-sentence, and during incarceration?  Staff should review institution records for evidence of contact (telephone, mail, email, visiting log, etc.).
- ■ Is there any evidence of child abuse, neglect, or exploitation in the PSR or other documents?
- ■ Are there any documents regarding the inmate's parenting skills or obligations (e.g., child support orders, restraining orders for physical or emotional abuse of spouse, registered partner or children, certificates for classes in anger management or other types of counseling, removal of child from the home for any reasons)?
- ■ Are there records regarding the termination of parental rights or loss of custody of the inmate's (other) child?
- ■ Does the inmate have a detainer as a deportable alien to a country other than where the child resides?
- ■ Has the inmate received public funding or had a job with a living wage for any period of time prior to incarceration?
- ■ Has the inmate engaged in programming (e.g., parenting, anger management) during incarceration that would indicate efforts to improve parenting skills or that would indicate a commitment to caring for the child upon release?

Wardens should also consider any additional reliable documentation (e.g., letters of support from family members, neighbors, doctors, hospitals, and state or local agencies).  Documentation may be obtained with the assistance of the Office of Probation and Pretrial Services.  Wardens should also consider whether the inmate participated in the Inmate Financial Responsibility Program and any information relating to the inmate's substance abuse treatment, physical/mental/ emotional health, and work evaluations during incarceration.

The care of a child may be requested to be a condition of the inmate's release to a supervised release term.  Thus, failure to care for the child may result in a finding of a supervised release violation and return to custody.

## 6.  REQUESTS BASED ON NON-MEDICAL CIRCUMSTANCES – INCAPACITATION OF A SPOUSE OR REGISTERED PARTNER

The criteria for a RIS request may include the incapacitation of an inmate's spouse or registered partner when the inmate would be the only available caregiver for the spouse or registered partner.

For these requests, "spouse" means an individual in a relationship with the inmate, where that relationship has been legally recognized as a marriage, including a legally-recognized common-law marriage.  "Registered partner" means an individual in a relationship with the inmate, where that relationship has been legally recognized as a civil union or registered domestic partnership.

The relationship should have been established before the inmate's offense date of arrest, and should be verified by information in the PSR or other administratively acceptable documentation (e.g. marriage certificate).

For these requests, "incapacitation" means the inmate's spouse or registered partner has:

■ Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or

■ A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.

For these requests, the inmate should demonstrate that the inmate is the only available caregiver for the spouse or registered partner, meaning there is no other family member or adequate care option that is able to provide primary care for the spouse or registered partner.

a. **First Stage of the Warden's Review.** The following information should be provided by the inmate to the Warden in writing for RIS requests based on the incapacitation of the spouse or registered partner:

■ Statement that explains that the inmate's spouse or registered partner has become incapacitated.
■ Statement that the inmate is the only family member capable of caring for the spouse or registered partner.
■ Verifiable medical documentation of the incapacitation of the spouse or registered partner.
■ A clear statement and documentation of the inmate's release plan, including housing, and the financial means to care for the spouse or registered partner immediately upon release.
■ Written authorization from the inmate and others (as needed) for the BOP to obtain any information or documents from any individual, medical entity or doctor, or any government agency about the inmate, the spouse or registered partner, or other family members.

The Warden may deny the inmate's request at the institution level of review if the Warden finds that the inmate has not provided adequate information and documentation as set forth above.

b. **Second Stage of the Warden's Review.** Even if the inmate provides adequate and sufficient information and documentation set forth above regarding the RIS request, further investigation is appropriate. At this stage, the Warden should convene a committee consisting of the inmate's unit manager, correctional counselor and any other relevant staff (social worker, physician, psychologist, etc.) to investigate the facts and circumstances provided by the inmate and to

Cited by U.S. Givens. 14-R546-09 Reported 8/14/22 Archived on 8/14/22 Further reproduction of this document is protected by copyright. Further reproduction prohibited without permission.

review supporting letters and documents before the Warden makes a recommendation to approve or deny the RIS request.  The information and supporting documentation gathered by the committee for the Warden's review should include:

■   A general description of the spouse's or registered partner's physical and mental condition.
■   A description of the nature of the spouse's or registered partner's care, as relevant, during the inmate's pre-arrest and pre-sentence period, and during the inmate's current incarceration.
■   Letters or documentation indicating whether the inmate is the only family member caregiver capable of caring for the spouse or registered partner.  This should include an explanation of who has been caring for the spouse or registered partner during the inmate's period of incarceration, as relevant.
■   Letters or documentation indicating the spouse or registered partner is, or would be, supportive of the inmate's release, and of the inmate assuming the role of the primary caregiver.

All RIS requests should be assessed using the factors outlined in Section 7 as well as the following factors.

■   Has the inmate committed violent acts before or during the period of incarceration, as reflected in the PSR, institution disciplinary records, or other appropriate documentation?
■   To what extent would the inmate and spouse or registered partner be relying on publicly available resources (e.g., financial or medical) to provide care to the spouse or registered partner?
■   Has the inmate ever been charged with, or convicted of, a crime of domestic violence?
■   Did the inmate share a residence with the spouse or registered partner prior to the period of incarceration?
■   Did the inmate have drugs, drug paraphernalia, firearms, or other dangerous substances in the home shared with the spouse or registered partner prior to incarceration?
■   To what degree has the inmate had contact with (or cared for) the spouse or registered partner prior to arrest, pretrial or pre-sentence, and during incarceration?  Staff should review institution records for evidence of contact (telephone, mail, email, visiting log, etc.).
■   Is there any evidence of abuse or neglect involving the spouse or registered partner in the PSR or other documents?
■   Are there any documents regarding the inmate's custodial skills or obligations (e.g., child support orders, restraining orders for physical or emotional abuse of spouse or registered partner or children, certificates for classes in anger management or other types of counseling, removal of children from the home for any reasons)?
■   Does the inmate have a detainer as a deportable alien to a country other than where the spouse or registered partner resides?
■   Has the inmate received public funding or had a job with a living wage for any period of time prior to incarceration?

- Has the inmate engaged in programming (e.g., anger management, financial responsibility program) during incarceration that would indicate efforts to improve custodial skills and/or that would indicate a commitment to the inmate's spouse or registered partner upon release?

Wardens should also consider any additional reliable documentation (e.g., letters of support from family members, neighbors, doctors, hospitals, and state or local agencies).  Documentation may be obtained with the assistance of the Office of Probation and Pretrial Services.

The care of the spouse or registered partner may be requested to be a condition of the inmate's release to a supervised release term.  Thus, failure to care for the spouse or registered partner may result in a finding of a supervised release violation and return to custody.

## 7. FACTORS AND EVALUATION OF CIRCUMSTANCES IN RIS REQUESTS

For all RIS requests, the following factors should be considered:

- Nature and circumstances of the inmate's offense.
- Criminal history.
- Comments from victims.
- Unresolved detainers.
- Supervised release violations.
- Institutional adjustment.
- Disciplinary infractions.
- Personal history derived from the PSR.
- Length of sentence and amount of time served.  This factor is considered with respect to proximity to release date or Residential Reentry Center (RRC) or home confinement date.
- Inmate's current age.
- Inmate's age at the time of offense and sentencing.
- Inmate's release plans (employment, medical, financial).
- Whether release would minimize the severity of the offense.

When reviewing RIS requests, these factors are neither exclusive nor weighted.  These factors should be considered to assess whether the RIS request presents particularly extraordinary and compelling circumstances.

Overall, for each RIS request, the BOP should consider whether the inmate's release would pose a danger to the safety of any other person or the community.

## 8. APPROVAL OF REQUEST

## §571.62  Approval of request.

**a.  The Bureau of Prisons makes a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only after review of the request by the Warden, the General Counsel, and either the Medical Director for medical referrals or the Assistant Director, Correctional Programs Division for non-medical referrals, and with the approval of the Director, Bureau of Prisons.**

**(1)  The Warden shall promptly review a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A).  If the Warden, upon an investigation of the request determines that the request warrants approval, the Warden shall refer the matter in writing with recommendation to the Office of General Counsel.**

The Warden's referral at a minimum must include the following:

a. The Warden's written recommendation as well as any other pertinent written recommendations or comments made by staff during the institution review of the request.

b.  A complete copy of Judgment and Commitment Order or Judgment in a Criminal Case and sentence computation data.

c.  A progress report that is not more than 30 days old.  All detainers and holds should be resolved prior to the Warden's submission of a case under 18 U.S.C. 3582 (c)(1)(A) or 4205(g).  If a pending charge or detainer cannot be resolved, an explanation of the charge or conviction status is needed.

d.  *All* pertinent medical records if the reason for the request involves the inmate's health. Pertinent records include, at a minimum, a Comprehensive Medical Summary by the attending physician, which should also include an estimate of life expectancy, and all relevant test results, consultations, and referral reports/opinions.

e.  The referral packet must include, when available, a copy of the Presentence Investigation and Form U.S.A. 792, Report on Convicted Offender by U.S. Attorney, Custody Classification form, Notice of Action forms, Probation form 7a, information on fines, CIM Case Information Summary (BP-A0339), and any other documented information that is pertinent to the request.  In the absence of a Form U.S.A. 792, the views of the prosecuting Assistant U.S. Attorney may be solicited; those views should be made part of the Warden's referral memo.

f.  If the inmate is subject to the Victim and Witness Protection Act of 1982 (VWPA), confirmation of notification to the appropriate victim(s) or witness(es) must be incorporated into the Warden's referral.  A summary of any comments received must also be incorporated into the referral.  If the inmate is not subject to the VWPA, a statement to that effect must be in the referral.

g.  For a request under 18 U.S.C. 3582(c)(1)(A), when a term of supervised release follows the term of imprisonment, confirmation that release plans have been approved by the appropriate U.S. Probation Office must be included in the referral.   If the inmate will be released to an area outside the sentencing district, the U.S. Probation Office assuming supervision must be contacted. If no supervision follows the term of imprisonment, release plans must still be developed.

h.  The development of release plans must include, at a minimum, a place of residence and the method of financial support, and may require coordination with various segments of the community, such as hospices, the Department of Veterans Affairs or veterans' groups, Social Security Administration, welfare agencies, local medical organizations, or the inmate's family.

i.  Because there is no final agency decision until the Director has reviewed the request, staff at any level may not contact the sentencing judge or solicit the judge's opinion through other officers of the court.

**(2)  If the General Counsel determines that the request warrants approval, the General Counsel shall solicit the opinion of either the Medical Director or the Assistant Director, Correctional Programs Division depending upon the nature of the basis for the request.  With this opinion, the General Counsel shall forward the entire matter to the Director, Bureau of Prisons, for final decision.**

**(3)  If the Director, Bureau of Prisons, grants a request under 18 U.S.C. 4205(g), the Director will contact the U.S. Attorney in the district in which the inmate was sentenced regarding moving the sentencing court on behalf of the Bureau of Prisons to reduce the minimum term of the inmate's sentence to time served.  If the Director, Bureau of Prisons, grants a request under 18 U.S.C. 3582(c)(1)(A), the Director will contact the U.S. Attorney in the district in which the inmate was sentenced regarding moving the sentencing court on behalf of the Director of the Bureau of Prisons to reduce the inmate's term of imprisonment to time served.**

**b.  Upon receipt of notice that the sentencing court has entered an order granting the motion under 18 U.S.C. 4205(g), the Warden of the institution where the inmate is confined shall schedule the inmate for hearing on the earliest Parole Commission docket.**

Institution staff prepare an amended Sentence Data Summary for use at this hearing. Staff provide a copy of the most recent progress report to the Parole Commission.

**Upon receipt of notice that the sentencing court has entered an order granting the motion under 18 U.S.C. 3582(c)(1)(A), the Warden of the institution where the inmate is confined shall release the inmate forthwith.**

**c.  In the event the basis of the request is the medical condition of the inmate, staff shall expedite the request at all levels.**

A request for an expedited review permits the review process to be expedited, but does not lessen the requirement that documentation be provided.

9.  **DENIAL OF REQUEST**

**§571.63  Denial of request.**

**a.  When an inmate's request is denied by the Warden, the inmate will receive written notice and a  statement of reasons for the denial.  The inmate may appeal the denial through the Administrative Remedy Procedure (28 CFR part 542, subpart B).**

**b.  When an inmate's request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) is denied by the General Counsel, the General Counsel shall provide the inmate with a written notice and statement of reasons for the denial.  This denial constitutes a final administrative decision.**

**c.  When the Director, Bureau of Prisons, denies an inmate's request, the Director shall provide the inmate with a written notice and statement of reasons for the denial within 20 workdays after receipt of the referral from the Office of General Counsel.  A denial by the Director constitutes a final administrative decision.**

**d.  Because a denial by the General Counsel or Director, Bureau of Prisons, constitutes a final administrative decision, an inmate may not appeal the denial through the Administrative Remedy Procedure.**

Under 18 USC 3582 (c) (1), an inmate may file a request for a reduction in sentence with the sentencing court after receiving a BP-11 response under subparagraph (a), the denial from the General Counsel under subparagraph (d), or the lapse of 30 days from the receipt of such a request by the Warden of the inmate's facility, whichever is earlier.

10.  **INELIGIBLE OFFENDERS**

**§571.64  Ineligible offenders.**

**The Bureau of Prisons has no authority to initiate a request under 18 U.S.C. 4205(g) or 3582(c)(1)(A) on behalf of state prisoners housed in Bureau of Prisons facilities or D.C. Code offenders confined in federal institutions.  The Bureau of Prisons cannot initiate such a motion on behalf of federal offenders who committed their offenses prior to November 1, 1987, and received non- parolable**

**sentences.**

## 11. TRACKING REDUCTION IN SENTENCE REQUESTS

To ensure consistent handling and documentation of RIS requests, Wardens must identify a staff member to serve as an institution RIS Coordinator (IRC) and an alternate. The principal responsibility of the IRC is to receive and document RIS requests and other RIS-related information in the RIS electronic tracking database.

For each RIS request, the following information is entered into the RIS tracking database by the IRC:

- Inmate's full name.
- Federal register number.
- Date of birth and age.
- Institution.
- Date RIS request received by institution.
- Reason for RIS request.
- Whether staff assisted the inmate with submitting the RIS request
- Whether the request was submitted by a third party (attorney, partner, family member).
- Disposition of request (e.g., approval or denial).
- Reason for disposition.
- Date of disposition of request.

At the Central Office (CO) level, information regarding RIS requests is entered into the database by RIS Coordinators in the Office of General Counsel, the Health Services Division, and the Correctional Programs Division. The following information is entered into the RIS tracking database by CO staff:

- Date RIS request received by CO.
- Director's final decision.

## 12. ANNUAL REPORT

Under 18 U.S.C. § 3582 (d)(3), not later than December 21, 2019, and once every year thereafter, the Director of the Bureau of Prisons shall submit to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report on requests for sentence reductions pursuant to subsection (c)(1)(A), which shall include a description of, for the previous year—

(A) the number of prisoners granted and denied sentence reductions, categorized by the criteria

relied on as the grounds for a reduction in sentence;

(B) the number of requests initiated by or on behalf of prisoners, categorized by the criteria relied on as the grounds for a reduction in sentence;

(C) the number of requests that Bureau of Prisons employees assisted prisoners in drafting, preparing, or submitting, categorized by the criteria relied on as the grounds for a reduction in sentence, and the final decision made in each request;

(D) the number of requests that attorneys, partners, or family members submitted on a defendant's behalf, categorized by the criteria relied on as the grounds for a reduction in sentence, and the final decision made in each request;

(E) the number of requests approved by the Director of the Bureau of Prisons, categorized by the criteria relied on as the grounds for a reduction in sentence;

(F) the number of requests denied by the Director of the Bureau of Prisons and the reasons given for each denial, categorized by the criteria relied on as the grounds for a reduction in sentence;

(G) for each request, the time elapsed between the date the request was received by the warden and final decision, categorized by the criteria relied on as the grounds for a reduction in sentence;

(H) for each request, the number of prisoners who died while their request was pending and, for each, the amount of time that had elapsed between the date the request was received by the Bureau of Prisons, categorized by the criteria relied on as the grounds for a reduction in sentence;

(I) the number of Bureau of Prisons notifications to attorneys, partners, and family members of their right to visit a terminally ill defendant as required under paragraph (2)(A)(ii) and, for each, whether a visit occurred and how much time elapsed between the notification and the visit;

(J) the number of visits to terminally ill prisoners that were denied by the Bureau of Prisons due to security or other concerns, and the reasons given for each denial; and

(K) the number of motions filed by defendants with the court after all administrative rights to appeal a denial of a sentence reduction had been exhausted, the outcome of each motion, and the time that had elapsed between the date the request was first received by the Bureau of Prisons and the date the defendant filed the motion with the court.

## 13. ACA AGENCY ACCREDITATION PROVISIONS

None.

## REFERENCES

*Directives Referenced*
P5162.05       Categorization of Offenses (3/16/09)

*Federal Regulations*
■   Rules cited in this Program Statement are contained in 28 CFR 571.60 through 571.64.

■   Rules referenced in this Program Statement are contained in 28 CFR 542.10 through 542.16
     and 572.40.

*U.S. Code Referenced*
■   Title 18, United States Code, Section 4205(g).
■   Title 18, United States Code, Section 3582.

*BOP Forms*
BP-A0339      CIM Case Information Summary
BP-A0192      Release of Information Consent

*Records Retention Requirements*
Requirements and retention guidance for records and information applicable to this program
are available in the Records and Information Disposition Schedule (RIDS) system on Sallyport.

Cited in US v Givens
14CR546-09 Decided 8/13/20
Archived on 8/24/20
This document is protected by copyright.
Further reproduction is prohibited without permission.